## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK RUBENSTEIN,<br><br>          Plaintiff,<br><br>          v.<br><br>HERON THERAPEUTICS, INC.,<br><br>          Nominal Defendant,<br><br>          and<br><br>TANG CAPITAL PARTNERS, LP,<br><br>          Defendant. | No.   **19-4117**<br>_____<br><br>**COMPLAINT FOR RECOVERY<br>OF SHORT SWING PROFITS<br>UNDER 15 U.S.C. § 78p(b)**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Mark Rubenstein ("Plaintiff"), by his attorney, as and for his Complaint herein, respectfully alleges as follows on knowledge as to himself and his own acts and on information and belief as to all other matters:

### <u>NATURE OF ACTION</u>

1.      This is an action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.      Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a public company who profited from the purchase and sale of the company's stock or derivative securities within a period of less than six months. Evidence of the defendant's intent, misuse of information, or bad faith is irrelevant and not required. Section 16(b) is not punitive, and insiders are simply required to disgorge profits realized in violation of the Act.

3.      Defendant Tang Capital Partners, L.P. ("TCP") was, at all relevant times (meaning at all times during the period of the short-swing trading alleged herein) an investment fund managed by Kevin C. Tang ("Tang"), the Chairman of the Board of Directors of Nominal Defendant Heron Therapeutics, Inc. ("Heron" or the "Company"), and a "beneficial owner" of more than 10% of the Company's common stock. TCP profited from purchases and sales of Heron common stock directed or executed by Tang within a period of less than six months, as further alleged herein. TCP is strictly required to account for and return all profits realized from these short swing transactions to the Company under Section 16(b).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Section 27 of the Act, 15 U.S.C. § 78aa.

5.      Venue is proper in this Court pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. At all relevant times, Heron common stock was traded on the NASDAQ, an exchange headquartered and located within this District. One or more of TCP's purchases or sales of Heron securities giving rise to Section 16(b) liability, as alleged herein, occurred on the NASDAQ and/or on other exchanges within the District. At all relevant times, TCP was primarily in the business of investing in and trading securities, including Heron securities, on exchanges located in this District. Both TCP and Heron regularly conduct business within the District.

## THE PARTIES

6.      Plaintiff Mark Rubenstein is a Rhode Island resident and a shareholder of Heron.

7.      Nominal Defendant Heron is a Delaware corporation with principal offices at 4242 Campus Point Court, Suite 200, San Diego, California 92121. This action is brought in the

right and for the benefit of Heron, which is named as Nominal Defendant solely in order to have all necessary parties before the Court.

8.      TCP is a Delaware limited partnership and registered investment fund with principal offices at 4747 Executive Drive Suite 510, San Diego, California 92121. Tang is the managing director of Tang Capital Management, LLC, which is the general partner of TCP, and responsible for TCP's investment and trading decisions with respect to Heron—including the decision to engage in the short swing trading giving rise to Section 16(b) liability as further alleged herein.

## STATUTORY REQUISITES

9.      At all relevant times, the common stock of Heron was registered pursuant to Section 12(b) of the Act, 15 U.S.C. § 78*l*(b).

10.     At all relevant times, TCP was a corporate insider of Heron subject to Section 16, as a "beneficial owner" of more than 10% of outstanding Heron common stock and a director by "deputization" with presumed access to non-public information through Tang, as the manager of TCP and a director of Heron.

11.     Demand for prosecution was made on Heron by Plaintiff's counsel by email on September 12, 2018, with follow-up emails sent on November 13, 2018, and on January 7, 2019, requesting that the Company confirm TCP's disgorgement of all short swing profits, which TCP acknowledged realizing from purchases and sales of Heron common stock directed by Tang as a Section 16 insider, as strictly required by the statute and as further described below. These emails were addressed to the Company's Board of Directors and sent to the email address for the Company's investor relations contact (and CFO), as publicized on the Company's website (*see* Heron IR website, attached as Ex. A) with a request to forward the Section 16 inquiry to the

Board. Because no response was received from the Company, Plaintiff's counsel's third email (on January 7, 2019) reminded the Company of Plaintiff's outstanding Section 16 inquiry and advised the Company that this action would be filed to compel the Company's enforcement of the statute, without further notice to the Company. (*See* Demand Correspondence, attached as Ex. B). As of the date of filing of this Complaint, Plaintiff's counsel has not received any response from the Company. Further delay in filing suit would be futile.

12.    This action is brought within two years of the occurrence of the violations described herein, or within two years of the time when TCP was required to report any transactions in SEC disclosures required under Section 16(a) of the Act, 15 U.S.C. § 78p(a). The statute of limitations has not yet begun to run on any transactions that were either not reported or misleadingly reported by or on behalf of TCP (including the transactions reported as gifts, as alleged in Count II), and any Heron securities transactions by TCP (or any TCP affiliate, including Tang and any entities under Tang's control), to the extent the transactions were not otherwise accurately publicly disclosed or available to the Plaintiff or his counsel.

13.    No exemptions are available to TCP, or to the transactions giving rise to Section 16(b) liability, as further described herein.

## FACTUAL BACKGROUND

### A.  TCP's Reported Short Swing Trading & Section 16 Liability (*see* Ex. C)

14.    On (or about) March 29, 2018, TCP, at Tang's direction, purchased 192,308 shares of Heron common stock from the Company in connection with the Company's March 28, 2018 underwritten public offering, at the public offering price of $26 per share.

15.    Because the terms of TCP's purchase, including the public offering price paid by TCP for the shares, were determined by the Company's underwriters (and ,not exclusively by the

Company), TCP's purchase of Heron common stock, as described in Paragraph 14, was ineligible for any Section 16 exemption available for transactions between companies and their directors (including directors by deputization) provided by SEC Rule 16b-3.

16.     On or about September 12, 2018, TCP, at Tang's direction, sold 2,695,000 shares of Heron common stock at a price of $35.75 per share. Tang reported this sale on behalf of TCP in an SEC Form 4 filed on the same date. Footnote 1 of the Form 4 stated:

> "The Reporting Person's [TCP's] sale of common stock reported herein may be deemed to be matchable under Section 16(b) of the Securities Exchange Act of 1934, as amended, to the extent of 192,308 shares of common stock purchased by the Reporting Person on March 29, 2018. The Reporting Person has sent to the Issuer [Heron] the full amount of the disgorgeable profit arising from the sale reported herein." (Tang Form 4, Ex. C).

17.     As Tang acknowledged in reporting the sale transaction on behalf of TCP, TCP's purchase of 192,308 shares on March 29, 2018, as described in Paragraph 14, may be matched with an equal number of shares sold by TCP on September 12, 2018, as described in Paragraph 16. TCP's profits from these short swing transactions are calculated by subtracting the purchase price from the sale price ($35.75-$26 = $9.75), and multiplying by the number of shares purchased and sold by TCP within less than six months (192,308), for total short swing profits of $1,875,003, which TCP is strictly required to disgorge to the Company in full under Section 16(b).

**B. The Company Ignores Plaintiff's Counsel's Section 16 Inquiry (*see* Ex. B)**

18.     Upon reviewing the SEC Form 4 filed by Tang, which reported TCP's short swing trading and stated that "the full amount of the disgorgeable profit" had been "sent to Heron" on behalf of TCP, as described above, Plaintiff's counsel emailed Heron's investor relations contact on September 12, 2018 (the date of TCP's short swing sale giving rise to Section 16 liability, and the date of TCP's Form 4 filing, which reported and acknowledged TCP's realization of profits

subject to disgorgement), to request that the Company confirm the Company's receipt of the profits reportedly disgorged by TCP and the amount of the disgorgement. Plaintiff's counsel did not receive any response.

19.     Plaintiff's counsel then sent a follow-up email on November 13, 2018, which advised the Company that the 60-day statutory demand period provided under Section 16(b) was expiring, and advising the Company that Plaintiff's counsel intended to file an action on behalf of the Company, as permitted by the statute, to compel TCP to comply with Section 16 by disgorging the full amount of short swing profits realized from the purchase described in Paragraph 14 and the sale described in Paragraph 16, which Plaintiff's counsel advised the Company exceeded $1.8 million. Again, Plaintiff's counsel did not receive any response to this communication.

20.     On January 7, 2019, Plaintiff's counsel emailed the Company's investor relations contact (for the third time) to advise that Plaintiff's counsel intended to file this action without further notice. As of the date of filing of this Complaint, Plaintiff's counsel has not received any response from the Company.

## COUNT I

**(Profits Recoverable Under Section 16(b) of the Securities Exchange Act)**

21.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-20.

22.     Defendant TCP had a direct or indirect "pecuniary interest" in all of the shares of Heron common stock purchased and sold in the transactions described in Paragraphs 14 and 16.

23.     TCP realized short swing profits of approximately $1,874,003 as a result of the transactions described in Paragraphs 14 and 15, which TCP must disgorge to the Company under Section 16(b).

## COUNT II

24.     As a precaution against possible errors of detail attributable to inaccuracies in the public record, Count II preserves Plaintiff's right to pursue additional profits potentially owed by TCP to the Company as a result of additional non-exempt transactions by TCP, as may be discovered during the course of this action.

25.     Specifically, in an SEC Form 5 filed by Tang, on behalf of TCP, on February 14, 2019, Tang reported that a total of 73,164 shares of Heron common stock were donated by TCP to an unnamed "charitable organization" in a series of transfers on December 7 and December 10, 2018. (*See* Tang Form 5, Ex. D, reporting a total of 39,970 shares donated on December 7 and 33,194 shares donated on December 10). According to publicly available market data, Heron common stock traded at an (adjusted) closing price of $26.55 per share on December 7, 2018, and $26.93 per share on December 10, 2018. Accordingly, the 39,970 shares of Heron common stock transferred by TCP, and reportedly donated to charity on December 7, 2018, had a total market value of approximately $1,061,203; and the 33,194 shares reportedly donated on December 10 had a total market value of approximately $893,914—amounting to a reported donation with a total market value of $1,955,117.

26.     While "bona fide" gifts of stock, including charitable donations, are exempt from Section 16 under SEC Rule 16b-5, Plaintiff intends to discover the circumstances surrounding the reported gift, and reserves the right to challenge the availability of the exemption if the facts discovered suggest that these transfers did not constitute bona fide gifts. To the extent that some or all of the transfers reported as gifts are not exempt, the transfers may be treated as additional Section 16 sales by TCP, which may increase the amount of TCP's liability to the Company (as calculated in COUNT I).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

(a)     requiring TCP to account for, and pay to Heron, all short swing profits realized by and recoverable from TCP under the Act, together with appropriate pre- and post-judgment interest and the costs of this suit;

(b)     awarding to Plaintiff his costs and disbursements including reasonable attorney's, accountant's, and expert witness fees; and

(c)     granting such other and further relief as the Court deems just and proper.

Dated: May 7. 2019

*s/ Miriam Tauber*                                        *s/ David Lopez*
_____          _____
Miriam Tauber (MT-1979)                           David Lopez (DL-6779)
MIRIAM TAUBER LAW PLLC                     LAW OFFICES OF DAVID LOPEZ
885 Park Ave. 2A                                        P.O. Box 323, 171 Edge of Woods. Rd.
New York, NY 10075                                  Southampton, NY 11969
(323) 790-4881                                           (631) 287-5520
MiriamTauberLaw@gmail.com                   DavidLopezEsq@aol.com